JUDGE SAND

08 CV 0145

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BUSHIDO CAPITAL MASTER FUND, L.P., BCMF       :    Index No.
TRUSTEES, L.L.C.,                              :
                                               :    Date Filed:
                        Plaintiffs,            :
                                               :
        -against-                              :
                                               :
HELIOS COATINGS, INC.,                         :    COMPLAINT
                                               :
                                               :    JURY TRIAL REQUESTED
                        Defendant.             :
---------------------------------------------------------------X

Plaintiffs, BUSHIDO CAPITAL MASTER FUND, L.P. and BCMF TRUSTEES, L.L.C. ("Plaintiffs"), by and through their attorneys, as and for their Complaint ("Complaint"), respectfully allege as follows:

### NATURE OF THIS ACTION

1.    This is an action to recover sums due pursuant to a Secured Promissory Note, dated August 29, 2006 (the "Note"), in which Defendant HELIOS COATINGS, INC. (the "Defendant") promised to pay to BUSHIDO CAPITAL MASTER FUND, L.P. the principal sum of Three Hundred Thousand Dollars ($300,000.00), with interest thereon at the rate of eight percent (8%) per annum. BUSHIDO CAPITAL MASTER FUND, L.P. later transferred and assigned a portion of its interest under the Note to BCMF TRUSTEES, L.L.C. The Note was due and payable on May 29, 2007. Defendant has failed to pay any interest or principal due pursuant to the Note.

### JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

3. In addition to jurisdiction over the Plaintiffs' claim for principal and interest due under the Note, this Court has jurisdiction over the Plaintiffs' claim for attorneys' fees, costs and expenses due under the Note pursuant to 28 U.S.C. § 1367(a).

4. Venue is also proper in this action pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the claim occurred within the Southern District of New York, and Defendant expressly consented to venue in this District pursuant to paragraph 12 of the Note.

5. Paragraph 12 of the Note provides in relevant part:

> All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law except for New York General Obligations Law Section 5-1401 and 5-1402. Maker and Payee agree that all legal proceedings concerning the interpretations, enforcement and defense of this Note shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "New York Courts"). Maker and Payee hereby irrevocably submit to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder (including with respect to the enforcement of this Note), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any court, that such suit, action or proceeding is improper.

6. Thus, Defendant has consented to the jurisdiction of this Court.

## PARTIES

7. Plaintiff BUSHIDO CAPITAL MASTER FUND, L.P. is a limited partnership organized and existing under the laws of the Cayman Islands, with its principal place of business located at 145 East 57th Street, 11th Floor, New York, NY 10022.

8. Plaintiff BCMF TRUSTEES, L.L.C. is a limited liability company organized and existing under the laws of the Cayman Islands, with its principal place of business located at 145 East 57th Street, 11th Floor, New York, NY 10022.

9. Upon information and belief and at all times mentioned herein, Defendant HELIOS COATINGS, INC. was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1411 Navarre Road S.W., Canton, OH 44706.

## THE NOTE

10. On or about August 29, 2006, BUSHIDO CAPITAL MASTER FUND, L.P., at the request of HELIOS COATINGS, INC., loaned HELIOS COATINGS, INC. the principal sum of Three Hundred Thousand and 00/100 Dollars ($300,000.00) (the "Loan").

11. In connection with the Loan, HELIOS COATINGS, INC. executed in favor of and delivered to BUSHIDO CAPITAL MASTER FUND, L.P. a Note, in the principal amount of Three Hundred Thousand and 00/100 Dollars ($300,000.00) (the "Note"), a true copy of which is annexed hereto and made a part hereof as Exhibit "A."

12. The Note provides that the full amount of principal and accrued interest was due on May 29, 2007 (the "Maturity Date").

13. The Note bears interest at a rate of eight percent (8%) per annum.

14. The Note provides that all overdue and unpaid principal and interest to be paid under the Note shall trigger a late fee at the rate of eighteen percent (18%) per annum, which will accrue daily, from the date such principal and/or interest is due under the Note through and including the date of payment.

15. The Note provides that if an Event of Default, as defined in the Note, has occurred and is continuing, interest shall accrue at a rate of eighteen percent (18%) per annum commencing five days after the occurrence of the Event of Default that results in acceleration of the Note.

16. Subsequent to execution of the Note, BUSHIDO CAPITAL MASTER FUND, INC. transferred and assigned a portion of its holdings under the Note to BCMF TRUSTEES, L.L.C. Therefore, both BUSHIDO CAPITAL MASTER FUND, INC. and BCMF TRUSTEES, L.L.C. are entitled to recover amounts due under the Note in proportion to their respective holdings.

## AS AND FOR A FIRST CAUSE OF ACTION

### Breach of Promissory Note

17. Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "16" as though fully set forth herein.

18. HELIOS COATINGS, INC. has failed to comply with the terms and provisions of the Note by failing and omitting to pay to Plaintiffs the principal and interest when same became due and payable.

19. By reason of the foregoing, HELIOS COATINGS, INC. is in default under the Note.

20. Plaintiffs are entitled to charge a late fee of 18% per annum on all overdue and unpaid principal and interest under the Note.

21. Pursuant to paragraph 2(b) of the Note, Plaintiffs are entitled to charge interest on the Note at a rate of 18% per annum, commencing five days after the occurrence of any Event of Default, as defined in the Note, that results in the acceleration of the Note.

22. Furthermore, pursuant to paragraph 2(b) of the Note, Plaintiffs are entitled to sell the 100,000 shares of common stock of SweetskinZ Holdings, Inc. that were pledged as collateral security for the Note.

23. HELIOS COATINGS, INC. has failed to cure its default despite due demand by Plaintiffs in writing on June 14, 2007.

24. Plaintiffs hereby declare the entire principal and interest due and payable in full.

25. Plaintiffs have complied with all the terms and provisions of the Note.

26. Pursuant to paragraph 7 of the Note, HELIOS COATINGS, INC. must pay Plaintiffs' costs of collection and reasonable attorneys' fees incurred in the investigation, preparation and prosecution of an action or proceeding to enforce the Note.

27. BUSHIDO CAPITAL MASTER FUND, L.P. seeks to recover the outstanding principal amount of $100,166.00 under the Note, together with normal interest in the amount of $7,390.00, default interest in the amount of $5,036.00, late charges, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees.

28. BCMF TRUSTEES, L.L.C. seeks to recover the outstanding principal amount of $162,846.00 under the Note, together with normal interest in the amount of $12,015.00, default interest in the amount of $8,188.00, late charges, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees.

**WHEREFORE**, Plaintiffs demand judgment as follows:

a. On the first cause of action, in favor of BUSHIDO CAPITAL MASTER FUND, L.P. and against Defendant, in an amount to be determined at trial, but in no event less than $112,593.00;

b. On the first cause of action, in favor of BCMF TRUSTEES, L.L.C. and against Defendant, in an amount to be determined at trial, but in no event less than $183,049.00;

    c.    For its costs and disbursements in this action; and

    d.    That Plaintiffs be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       January 7, 2008

                      CROWELL & MORING LLP

              By: _____
                      Peter R. Ginsberg
                      Attorneys for Plaintiff
                      BUSHIDO CAPITAL MASTER FUND, L.P.
                      BCMF TRUSTEES, L.L.C.
                      153 East 53rd Street, 31st Floor
                      New York, New York 10022
                      (212) 223-4000

# EXHIBIT A

**8% SECURED PROMISSORY NOTE**

$300,000                                                                                                              August 29, 2006

FOR VALUE RECEIVED, Helios Coatings, Inc., a Delaware corporation, with offices located at 275 Seventh Avenue, suite 2000, New York, NY 10001 (the "Maker") promises to pay to the order of Bushido Capital Master Fund, L.P., or its registered assigns (the "Payee"), upon the terms set forth below, the principal sum of Three Hundred Thousand Dollars ($300,000.00) plus interest on the unpaid principal sum outstanding at the rate of 8% per annum.

1. Payments.

    (a) The full amount of principal and accrued interest under this Note shall be due on May 29, 2007 (the "Maturity Date"), unless due earlier in accordance with the terms of this Note.

    (b) The Maker shall pay interest to the Payee on the aggregate unconverted and then outstanding principal amount of this Note at the rate of 8% per annum, payable on a monthly basis in arrears, unless due earlier in accordance with the terms of this Note.

    (c) All overdue accrued and unpaid principal and interest to be paid hereunder shall entail a late fee at the rate of 18% per annum (or such lower maximum amount of interest permitted to be charged under applicable law) which will accrue daily, from the date such principal and/or interest is due hereunder through and including the date of payment.

    (d) Maker may prepay, in whole or in part, the principal sum and interest under this Note without the prior written consent of Payee.

2. Events of Default.

    (a)    "Event of Default", wherever used herein, means any one of the following events (whatever the reason and whether it shall be voluntary or involuntary or effected by operation of law or pursuant to any judgment, decree or order of any court, or any order, rule or regulation of any administrative or governmental body):

        (i) any default in the payment of the principal of, or the interest on, this Note, as and when the same shall become due and payable;

        (ii) Maker shall fail to observe or perform any obligation or shall breach any term or provision of this Note and such failure or breach shall not

have been remedied within five days after the date on which notice of such failure or breach shall have been delivered;

(iii) Maker shall fail to observe or perform any obligations owed to Payee or any other covenant, agreement, representation or warranty contained in, or otherwise commit any breach hereunder or in any other agreement executed in connection herewith and such failure or breach shall not have been remedied within five days after the date on which notice of such failure or breach shall have been delivered;

(iv) Maker shall commence, or there shall be commenced against Maker a case under any applicable bankruptcy or insolvency laws as now or hereafter in effect or any successor thereto, or Maker commences any other proceeding under any reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any jurisdiction whether now or hereafter in effect relating to Maker, or there is commenced against Maker any such bankruptcy, insolvency or other proceeding which remains undismissed for a period of 60 days; or Maker is adjudicated insolvent or bankrupt; or any order of relief or other order approving any such case or proceeding is entered; or Maker suffers any appointment of any custodian or the like for it or any substantial part of its property which continues undischarged or unstayed for a period of 60 days; or Maker makes a general assignment for the benefit of creditors; or Maker shall fail to pay, or shall state that it is unable to pay, or shall be unable to pay, its debts generally as they become due; or Maker shall call a meeting of its creditors with a view to arranging a composition, adjustment or restructuring of its debts; or Maker shall by any act or failure to act expressly indicate its consent to, approval of or acquiescence in any of the foregoing; or any corporate or other action is taken by Maker for the purpose of effecting any of the foregoing;

(v) Maker shall default in any of its respective obligations under any other note or any mortgage, credit agreement or other facility, indenture agreement, factoring agreement or other instrument under which there may be issued, or by which there may be secured or evidenced any indebtedness for borrowed money or money due under any long term leasing or factoring arrangement of Maker, whether such indebtedness now exists or shall hereafter be created and such default shall result in such indebtedness becoming or being declared due and payable prior to the date on which it would otherwise become due and payable and the amount of such accelerated indebtedness exceeds $50,000;

(vi) Maker shall (a) be a party to any Change of Control Transaction (as defined below), (b) agree to sell or dispose all or in excess of 33% of its assets in one or more transactions (whether or not such sale would constitute a Change of Control Transaction), (c) redeem or repurchase

more than a de minimis number of shares of Common Stock or other equity securities of Maker, or (d) make any distribution or declare or pay any dividends (in cash or other property, other than common stock) on, or purchase, acquire, redeem, or retire Makers' capital stock, of any class, whether now or hereafter outstanding. "Change of Control Transaction" means the occurrence of any of: (i) an acquisition after the date hereof by an individual or legal entity or "group" (as described in Rule 13d-5(b)(1) promulgated under the Securities Exchange Act of 1934, as amended) of effective control (whether through legal or beneficial ownership of capital stock of Maker, by contract or otherwise) of in excess of 66% of Maker, (ii) a replacement at one time or over time of more than one-half of the members of Maker's board of directors which is not approved by a majority of those individuals who are members of the board of directors on the date hereof (or by those individuals who are serving as members of the board of directors on any date whose nomination to the board of directors was approved by a majority of the members of the board of directors who are members on the date hereof), (iii) the merger of Maker with or into another entity that is not affiliated with the Maker, consolidation or sale of 66% or more of the assets of any Maker in one or a series of related transactions, or (iv) the execution by Maker of an agreement to which Maker is a party or by which it is bound, providing for any of the events set forth above in (i), (ii) or (iii); or

(vii) Maker shall unreasonably modify or change its method of accounting or enter into, modify, or terminate any agreement currently existing, or at any time hereafter entered into with any third party accounting firm or service bureau for the preparation or storage of its accounting records, or restate or modify its financial statements for any period of time prior to the date of this Note which shall be material and adverse to Maker.

(b)   If any Event of Default occurs, the full principal amount of this Note, together with all accrued interest thereon, shall become, upon notice of the Payee's election, immediately due and payable in cash. Commencing five days after the occurrence of any Event of Default that results in the acceleration of this Note, the interest rate on this Note shall accrue at the rate of 18% per annum, or such lower maximum amount of interest permitted to be charged under applicable law. The Maker has provided as additional collateral a pledge of 100,000 shares of common stock of SweetskinZ Holdings, Inc (such pledge in the form of physical delivery of a certificate evidencing such shares together with a stock power executed by Maker). If any Event of Default occurs, as an additional remedy to Payee, Payee may elect to sell the SweetskinZ Holdings, Inc shares. All proceeds derived from such sales shall reduce the amount owed by Maker under this note including principal, interest and penalties and costs incurred by Maker. Except as expressly set forth in this Note, the Payee need not provide and Maker hereby waives any presentment, demand, protest or other notice of any kind, and the Payee may immediately and without expiration of any grace period enforce

3

any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such declaration may be rescinded and annulled by Payee at any time prior to payment hereunder. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon.

4. <u>No Waiver of Payee's Rights</u>.   All payments of principal and interest shall be made without setoff, deduction or counterclaim. No delay or failure on the part of the Payee in exercising any of its options, powers or rights, nor any partial or single exercise of its options, powers or rights shall constitute a waiver thereof or of any other option, power or right, and no waiver on the part of the Payee of any of its options, powers or rights shall constitute a waiver of any other option, power or right. Maker hereby waives presentment of payment, protest, and all notices or demands in connection with the delivery, acceptance, performance, default or endorsement of this Note. Acceptance by the Payee of less than the full amount due and payable hereunder shall in no way limit the right of the Payee to require full payment of all sums due and payable hereunder in accordance with the terms hereof.

5. <u>Modifications</u>.   No term or provision contained herein may be modified, amended or waived except by written agreement or consent signed by the party to be bound thereby.

6. <u>Cumulative Rights and Remedies; Usury</u>.   The rights and remedies of Payee expressed herein are cumulative and not exclusive of any rights and remedies otherwise available under this Note or applicable law (including at equity). The election of Payee to avail itself of any one or more remedies shall not be a bar to any other available remedies, which Maker agrees Payee may take from time to time. If it shall be found that any interest due hereunder shall violate applicable laws governing usury, the applicable rate of interest due hereunder shall be reduced to the maximum permitted rate of interest under such law.

7. <u>Collection Expenses</u>.   If Payee shall commence an action or proceeding to enforce this Note, then Maker agrees to reimburse Payee for its costs of collection and reasonable attorneys fees incurred with the investigation, preparation and prosecution of such action or proceeding.

8. <u>Severability</u>.   If any provision of this Note is declared by a court of competent jurisdiction to be in any way invalid, illegal or unenforceable, the balance of this Note shall remain in effect, and if any provision is inapplicable to any person or circumstance, it shall nevertheless remain applicable to all other persons and circumstances. If it shall be found that any interest or other amount deemed interest due hereunder shall violate applicable laws governing usury, the applicable rate of interest due hereunder shall automatically be lowered to equal the maximum permitted rate of interest.

9. <u>Successors and Assigns</u>.   This Note shall be binding upon Maker and its successors and shall inure to the benefit of the Payee and its successors and assigns. The

term "Payee" as used herein, shall also include any endorsee, assignee or other holder of this Note.

10. **Lost or Stolen Promissory Note.** If this Note is lost, stolen, mutilated or otherwise destroyed, Maker shall execute and deliver to the Payee a new promissory note containing the same terms, and in the same form, as this Note. In such event, Maker may require the Payee to deliver to Maker an affidavit of lost instrument and customary indemnity in respect thereof as a condition to the delivery of any such new promissory note.

11. **Due Authorization.** This Note has been duly authorized, executed and delivered by Maker and is the legal obligation of Maker, enforceable against Maker in accordance with its terms. No consent of any other party and no consent, license, approval or authorization of, or registration or declaration with, any governmental authority, bureau or agency is required in connection with the execution, delivery or performance by Maker, or the validity or enforceability of this Note other than such as have been met or obtained. The execution, delivery and performance of this Note and all other agreements and instruments executed and delivered or to be executed and delivered pursuant hereto or thereto or the securities issuable upon conversion of this will not violate any provision of any existing law or regulation or any order or decree of any court, regulatory body or administrative agency or the certificate of incorporation or by-laws of Maker or any mortgage, indenture, contract or other agreement to which Maker is a party or by which Maker or any property or assets of Maker may be bound.

12. **Governing Law.** All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof except for New York General Obligations Law Section 5-1401 and 5-1402. Maker and Payee agree that all legal proceedings concerning the interpretations, enforcement and defense of this Note shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "New York Courts"). Maker and Payee hereby irrevocably submit to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder (including with respect to the enforcement of this Note), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is improper. Maker and Payee hereby irrevocably waive personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to the other at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. Maker and Payee hereby irrevocably waive, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Note or the transactions contemplated hereby.

13. <u>Notice.</u> Any and all notices or other communications or deliveries to be provided by the Payee hereunder, including, without limitation, any conversion notice, shall be in writing and delivered personally, by facsimile, sent by a nationally recognized overnight courier service or sent by certified or registered mail, postage prepaid, addressed to 275 Seventh Avenue, Suite 2000, New York, NY 10001 <u>Attention</u>: Mr. Mark E. Leininger or such other address or facsimile number as Maker may specify for such purposes by notice to the Payee delivered in accordance with this paragraph. Any and all notices or other communications or deliveries to be provided by the Maker hereunder shall be in writing and delivered personally, by facsimile, sent by a nationally recognized overnight courier service or sent by certified or registered mail, postage prepaid, addressed to each Payee at the address of such Payee appearing on the books of the Maker, or if no such address appears, at the principal place of business of the Payee. Any notice or other communication or deliveries hereunder shall be deemed given and effective on the earliest of (i) the date of transmission if delivered by hand or by telecopy that has been confirmed as received by 5:00 P.M. on a business day, (ii) one business day after being sent by nationally recognized overnight courier or received by telecopy after 5:00 P.M. on any day, or (iii) five business days after being sent by certified or registered mail, postage and charges prepaid, return receipt requested.

The undersigned signs this Note as a maker and not as a surety or guarantor or in any other capacity.

HELIOS COATINGS, INC.
By: _____
Name: MARK E. LEININGER
Title: CHAIRMAN AND CEO

6